UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRELL D. LEWIS,

    Petitioner,

Case No. 16-cv-12838
Hon. Matthew F. Leitman

v.

TONY TRIERWEILER,

    Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF #1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner Terrell D. Lewis is a state prisoner in the custody of the Michigan Department of Corrections. On August 24, 2012, a jury in the Wayne County Circuit Court convicted Lewis of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(e), and kidnapping, MICH. COMP. LAWS § 750.349. The state trial court then sentenced Lewis to two concurrent terms of 17-to-35 years of imprisonment and lifetime electronic monitoring.

On August 2, 2017, Lewis filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* ECF #1.) Lewis raises two claims in his petition: (1) he was deprived of the effective assistance of counsel when his lawyer failed to object to testimony by police officers that they were looking for a serial

rapist, and (2) the state trial court erroneously sentenced him to lifetime electronic monitoring. (*See id*.)

The Court has reviewed Lewis' claims and concludes that he is not entitled to relief. Therefore, for the reasons stated below, the Court **DENIES** Lewis' petition. The Court further **DENIES** Lewis a certificate of appealability. However, the Court **GRANTS** Lewis permission to appeal *in forma pauperis*.

## I

The charges against Lewis arose from allegations that he used a social-networking website called "Mocospace" to lure the victim, Elizabeth Tipton, to an abandoned house where he raped her.

Prior to trial, the prosecutor filed a motion to introduce other-acts evidence relating to the sexual assault of two other women. The prosecutor asserted that Lewis contacted these other women on the same website, lured them to the same abandoned house, and sexually assaulted them in a similar manner. The state trial court ruled that the evidence would be admissible under Michigan Rule of Evidence 404(b) if Lewis chose to assert a defense of consent. (*See* ECF #7-5 at Pg. ID 271-73.)

At trial, Tipton testified that sometime during November of 2011 she began communicating with an individual identifying himself as "Mr. Black 313" on Mocospace. (ECF #7-19 at Pg. ID 511-13.) Tipton identified "Mr. Black 313" as Lewis. (*See id.*) The two eventually exchanged phone numbers. (*See id.* at Pg. ID

514.) In the early morning hours of December 25, 2011, Lewis offered to pay Tipton $200 for sex, and he texted her an address on Mettetal Street in Detroit. (*See id.* at Pg. ID 514-16.)

Tipton arrived at the address in her car, and Lewis greeted her outside. (*See id.* at 516-17.) It was still dark, but the area was lit by a flood light. (*See id.* at Pg. ID 519.) As Tipton walked up onto the porch and through the door, Lewis grabbed her by the neck, put something that felt like a gun to her back, and forced her into the house. (*See id.* at Pg. ID 520-24.)

Tipton testified that Lewis said, "Do you feel this in your back? I'd advise you to do what I tell you to do. I just want the pussy." (*Id.* at Pg. ID 522.) Lewis pushed her onto a couch and took off her clothes. (*See id.* at Pg. ID 524.) Lewis then penetrated her vagina with his penis. (*See id.* at Pg. ID 533.) After he finished, Lewis took Tipton's purse and ran out of the house. (*See id.* at Pg. ID 535.)

Tipton returned home and told her sister what happened. (*See id.* at Pg. ID 538.) Tipton's mother then took Tipton to the police station and later to the hospital. (*See id.* at Pg. ID 539.)

In an effort to locate Lewis, Tipton posted a fake profile on another social networking website called "Tag." (*See id.* at Pg. ID 545-46.) She eventually found a photograph of Lewis on that website that was the same one Lewis used for his Mocospace profile. (*See id.* at Pg. ID 548.) Lewis contacted Tipton's fake profile

and offered to pay $150 in exchange for sex. (*See id.* at Pg. ID 549-50.) He then directed Tipton to the same area he had directed her to before. (*See id.* at Pg. ID 552.) Instead of meeting Lewis at that location, Tipton printed copies of Lewis' profile photos and gave them to the police. (*See id.* at Pg. ID 552-53.) The police thereafter arrested Lewis. (*See id.* at Pg. ID 553.)

After Lewis was arrested, Tipton failed to identify him in a photo array. (*See id.* at Pg. ID 555.) Subsequently, however, she picked Lewis out at a live line-up. (*See id.* at Pg. ID 556-58.)

A second woman, Josalyn Jackson, testified that she used Mocospace to engage in prostitution. (*See id.* at Pg. ID 649.) Jackson said that on April 6, 2012, she went to 14550 Mettetal Street to meet a man she had communicated with on Mocospace. (*See id.* at Pg. ID 645, 654.) She later identified the man as Lewis. (*See id.*) Lewis offered to pay her $200 for sex. (*See id.* at Pg. ID 652-53.) When she went inside the house, Lewis put his arm around her neck. (*See id.* at Pg. ID 661-62.) It felt to Jackson like Lewis pushed his hand against her back as if he had a gun. (*See id.*) Lewis then pushed Jackson over the couch and took her cell phone and purse. (*See id.* at Pg. ID 664-66.) He also pulled down her pants and penetrated her vagina with his penis. (*See id.* at Pg. ID 666-68.) Lewis then ran from the house with Jackson's purse. (*See id.* at Pg. ID 671.) Jackson followed him outside and yelled that she had just been raped. (*See id.* at Pg. ID 672.)

Jackson later spoke to the police and had a rape kit performed at the hospital. (*See id.* at Pg. ID 673-76.) Jackson did not initially tell the police about agreeing to have sex for money because she was embarrassed. (*See id.* at Pg. ID 676-77.)

Neither Jessica Lyons (the other similar-acts witness) nor Lewis testified at trial.

Detroit Police Officer William Brewster testified that he assisted Officer Jose Ortiz canvassing the neighborhood around Mettetal Street. (*See* ECF #7-11 at Pg. ID 732.) During direct examination the following exchange occurred:

> Q: Do you recall what you were canvassing for?
>
> A: We were canvassing the neighborhood for a serial rapist.

(*Id.* at Pg. ID 732.)

On redirect examination, the following exchange occurred:

> Q: What do you recall Officer Ortiz telling you?
>
> A: He informed me that the gentleman we were looking for was a serial rapist that was preying on women through Mocospace.

(*Id.* at Pg. ID 749.)

Officer Brewster testified that during the canvass of the neighborhood he encountered Lewis' mother, and she identified Lewis in a copy of the photograph that Tipton had printed out. (*See id.* at Pg. ID 734-35.) The officer went with Lewis' mother to her house at 14444 Mettetal Street, and while they were there, Lewis

5

called. Brewster got onto the phone, and he told Lewis that he needed to come to the police station to talk to him about a robbery. (*See id.* at Pg. ID 739.) A few hours later, Lewis arrived at the police station. (*See id.* at Pg. ID 747.)

Detroit Police Officer Jose Ortiz testified that he conducted a canvass on Mettetal Street with Officer Brewster. (*See id.* at Pg. ID 765.) He showed Lewis' mother copies of the photographs printed-out by Tipton, and she identified Lewis and recognized the wall in the photograph as her bathroom. (*See id.* at Pg. ID 766-77.)

The following exchange occurred during direct examination of Officer Ortiz:

> Q (by prosecutor): At what point was it that you took over that case?
>
> A. I can't remember the date, but the decision was made by supervision to give me all the - there were some other cases with similar methods of operations, so I was given –
>
> Mr. Magidson (defense trial counsel): Judge, I'm going to object to going to alleged other cases and so forth. I know there's been a witness here, but I think that's going –
>
> The Court: I think the question was, when did take [sic] over? Is that the question that was asked?
>
> Ms. Abdelnour (prosecutor): Yes, your Honor. Okay.

(*Id.* at Pg. ID 764-65.)

Forensic scientist Erica Anderson testified that DNA taken from sperm found on Tipton's vaginal swab matched Lewis. (*See* ECF #7-10 at Pg. ID 629-30, 641-

6

42.) She opined that the likelihood of another African-American having the same profile was 1-in-4.003 quadrillion. (*See id.* at Pg. ID 641-42.) Lewis' DNA also matched a sperm sample from Josalyn Jackson's vaginal swabs, with the same low probability of a mismatch. (*See id.*)

During closing arguments, Lewis' counsel argued that Tipton and Jackson were admitted prostitutes and that the sex was consensual. (*See id.* at Pg. ID 799-803.) Counsel asserted that the two women falsely accused Lewis of rape because Lewis "didn't pay [them]. He didn't pay them what they asked for. That wasn't right. He had a deal. He breached an agreement. Pay the woman. Had he just paid them, he wouldn't be here." (*Id.* at Pg. ID 804.)

The jury found Lewis guilty of the offenses described above. (*See* ECF #8-13 at Pg. ID 856-59.)

Following his conviction and sentence, Lewis filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal raised the following claims:

> I. Defense trial counsel was constitutionally ineffective in failing to object and move for a mistrial based on unfairly prejudicial similar acts evidence and violation of Appellant's Sixth Amendment confrontation rights, where a police officer testified that "the gentleman we were looking for was a serial rapist" and the officer in charge testified that he took over the case because there were "some other cases with similar methods of operations."
>
> II. The trial court violated Appellant's due process rights by scoring sentencing guidelines offense variables and determining Appellant's minimum sentence based on

> disputed facts that the prosecutor did not charge and prove beyond a reasonable doubt to a jury.
>
> III. The trial court improperly sentenced Appellant to lifetime electronic monitoring without statutory authority, where the complainant was not less than thirteen years of age.

The Michigan Court of Appeals affirmed Lewis' convictions in an unpublished opinion. *See People v. Lewis*, 2014 WL 1515274 (Mich. Ct. App. Apr. 17, 2014).

Lewis then filed an application for leave to appeal in the Michigan Supreme Court, raising these same three claims. The Michigan Supreme Court remanded the case to the state trial court to determine whether a different sentence was warranted under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), but denied the application for leave to appeal with respect to Lewis' other claims. *See People v. Lewis*, 870 N.W.2d 706 (Mich. 2015) (Table).

II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that where a state court has adjudicated a claim on the merits, a federal court may not grant habeas relief on the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

**III**

**A**

Lewis first argues that he was denied the effective assistance of counsel in two respects when his trial attorney failed to object to, and move for a mistrial based upon, testimony by two police officers that they were searching for a "serial rapist" and there were "other cases with similar methods." First, Lewis contends that his counsel should have objected to this testimony on the basis that it was inconsistent with the evidence produced at trial and caused the jury to be prejudiced against him. Second, Lewis maintains that his counsel should have objected to this testimony on the grounds that it amounted to the presentation of testimonial hearsay in violation of his Sixth Amendment confrontation rights. The Court disagrees on both points.

Ineffective-assistance claims are reviewed under the two-part test described in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a defendant to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. *See id.* at 687. Counsel is "strongly presumed to have rendered adequate assistance

9

and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. On habeas review, the question is "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Michigan Court of Appeals considered Lewis' ineffective-assistance claim on direct appeal and rejected it on the merits:

> Defendant's first ineffective assistance of counsel argument is premised on the testimony of Officer William Brewster. The prosecution asked Officer Brewster if he was involved in any type of investigation regarding defendant, and Officer Brewster indicated that he was assisting Officer Jose Ortiz with a canvass of a neighborhood. The prosecution then asked Officer Brewster what he and Officer Ortiz were canvassing the neighborhood for, and Officer Brewster replied, "we were canvassing the neighborhood for a serial rapist." On redirect, Officer Brewster again stated that Officer Ortiz told him that "the gentleman we were looking for was a serial rapist that was preying on women through Mocospace." Defense counsel did not object to either statement. Defendant argues on appeal that this failure to object constituted ineffective assistance of counsel. We disagree.
>
> First, Officer Brewster's testimony that they were looking for a "serial rapist" is not inconsistent with the evidence presented to the jury. The jury heard testimony from the victim in this case as well as testimony, admitted under

10

MRE 404(b), from another woman who claimed to have been sexually assaulted by defendant in a very similar manner as the victim. Thus, the jury was aware that defendant was accused of two sexual assaults, and the comment by Officer Brewster regarding the search for a "serial rapist" was not inaccurate. Thus, any objection by defense counsel would have been futile, and "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich. App. at 201. Moreover, defense counsel may have determined that objecting to Brewster's fleeting characterizations of what the officers were looking for during their canvassing would only have placed greater emphasis on those characterizations, and simply allowing them to pass was the better trial strategy. This Court will not substitute its judgment for that of defense counsel on matters of strategy, nor will it employ the benefit of hindsight. *Payne*, 285 Mich. App. at 190. Finally, because the jury was already aware of the fact that defendant was accused of more than one sexual assault, the reference to him as a "serial rapist" did not suggest anything new to the jury. Thus, defendant cannot demonstrate any prejudice as a result of the reference.

Defendant also argues that defense counsel should have moved for mistrial in response to Officer Brewster's testimony. However, unresponsive, volunteered testimony in response to a proper question is not grounds for a mistrial. *People v. Waclawski*, 286 Mich. App. 634, 710 (2009). Here, Officer Brewster's statement that police were looking for a "serial rapist" was in response to two separate and proper questions from the prosecution regarding what the officers were looking for when they were canvassing the neighborhood. In neither instance did the prosecution elicit further information or testimony regarding the "serial rapist" title that Officer Brewster attributed to defendant. Nor did the prosecution make any argument to the jury that would suggest defendant engaged in the sexual assault of victims other than the victim in this case and the 404(b) witness. Therefore, the

isolated statements from Officer Brewster did not merit a mistrial and defense counsel was not ineffective for failing to request one because, again, the failure to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich. App. at 201.

Further, defendant argues that Officer Brewster's statements violated the Confrontation Clause because the statements amounted to the testimonial statements of citizens obtained during a criminal investigation. We find defendant's argument unavailing. Even assuming the statements were testimonial, the protections afforded by the Confrontation Clause apply only to statements used as substantive evidence, *People v. Nunley*, 491 Mich. 686, 697 (2012), specifically out-of-court statements of witnesses who bear testimony against a defendant, *People v. Fackelman*, 489 Mich. 515, 528 (2011). Brewster's statements regarding his search for a "serial rapist" were in response to questions surrounding the canvassing of the neighborhood, and the purported identity of the suspect. These statements were made to explain the purpose and context of the officers' search of the neighborhood and were not proffered to prove that defendant actually was a "serial rapist." *Nunley*, 491 Mich. at 697. Further, Brewster's testimony was in regard to his own motivations and was not meant to relay information elicited from out-of-court witnesses. *Fackelman*, 489 Mich. at 528. Therefore, because these statements were not offered as substantive evidence, the protections of the Confrontation Clause do not apply. Accordingly, defense counsel was not ineffective for failing to raise a Confrontation Clause objection because such an objection would have been meritless. *Ericksen*, 288 Mich. App. at 201.

Defendant also argues that defense counsel was ineffective in regard to the testimony of Officer Ortiz. The prosecution asked Officer Ortiz when he took over the investigation of the case, and Ortiz responded that he could not remember the date, but that "there were some

other cases with similar methods of operations." Defense counsel objected immediately to the reference to the "alleged other cases," and the trial court noted that it recalled the question being about when Officer Ortiz took over the case, and asked "is that the question that was asked?" The prosecution affirmed that was the question, and asked Officer Ortiz again whether he recalled the date he took over the case. Officer Ortiz replied that he took over in "early April." There was no further reference to other cases.

We conclude that defense counsel was not ineffective in his handling of Ortiz's testimony. First, we note that contrary to defendant's argument, defense counsel did object to Ortiz's testimony that there were "some other cases with similar methods of operations." Moreover, while defense counsel could have requested a curative instruction, it was reasonable trial strategy not to in order to avoid calling additional attention to the comment. Further, defendant cannot demonstrate any prejudice from the statement because it was nonresponsive, and there is no evidence to indicate that the prosecution argued that there were multiple victims beyond the testimony that was presented to the jury.

We also reject defendant's argument that defense counsel was ineffective for failing to move for a mistrial in response to Officer Ortiz's testimony. As noted, this Court has held that unresponsive, volunteered testimony in response to a proper question is not grounds for a mistrial. *People v. Waclawski*, 286 Mich. App. 634, 710 (2009). Officer Ortiz's comment that there were "some other cases with similar methods of operations" was clearly nonresponsive to the prosecution's question about what date Officer Ortiz took over the case. Thus, any motion for a mistrial would have been meritless, and defense counsel is not ineffective for failing to make one. *Ericksen*, 288 Mich. App. at 201.

> Similarly, we also reject defendant's argument that defense counsel was ineffective for failing to object to Officer Ortiz's testimony on Confrontation Clause grounds. The protections afforded by the Confrontation Clause apply only to statements used as substantive evidence. *Nunley*, 491 Mich. at 697. Officer Ortiz's statement was clearly not offered as substantive evidence because it was nonresponsive, had to do with the reasons he took the actions that he took, and did not concern out-of-court statements of witnesses who bear testimony against defendant. *Id*.; *Fackelman*, 489 Mich. at 528. Thus, defendant has failed to demonstrate that defense counsel was ineffective for failing to raise a Confrontation Clause objection. *Ericksen*, 288 Mich. App. at 201.

*Lewis*, 2014 WL 1515274, at \*\* 1–3.

This decision did not involve an objectively unreasonable application of the *Strickland* prejudice standard. It was not unreasonable for the Michigan Court of Appeals to conclude that Officer Brewster's testimony that he was canvassing the neighborhood for a "serial rapist" (1) was not inconsistent with the evidence presented at trial and (2) did not cause Lewis prejudice under *Strickland*. Indeed, as described above, two women, including the victim here, accused Lewis of sexual assault, and thus it was not unreasonable for the Michigan Court of Appeals to conclude that the term "serial rapist" was not inaccurate. Moreover, it was not unreasonable for the Court of Appeals to conclude that that Lewis did not suffer any prejudice by the complained-of testimony given the evidence that he had committed multiple sexual assaults.

The same analysis holds true for Officer Ortiz's comments. It was not unreasonable for the Michigan Court of Appeals to conclude that Officer Ortiz's testimony that he was investigating cases "with similar methods of operations" was supported by evidence presented at trial that Lewis raped two woman using the same modus operandi. In any event, and as noted by the Michigan Court of Appeals, defense counsel did object to Oritz's testimony, and the prosecutor quickly moved on to the next point. The Michigan Court of Appeals' conclusion that Lewis did not suffer any prejudice as a result of this testimony was not unreasonable.

Finally, the Michigan Court of Appeals did not unreasonably reject Lewis' ineffective assistance of counsel claim based on his counsel's failure to object on Confrontation Clause grounds to the testimony of Officers Brewster and Ortiz. The Confrontation Clause "prohibits the introduction of testimonial statements of witnesses absent from trial, unless the 'declarant is unavailable, and . . . the defendant has had a prior opportunity to cross-examine [the declarant].'" *Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015) (citing *Crawford v Washington*, 541 U.S 36, 51 (2004)). The clause, however, "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.*, 541 U.S. at 60 n.9; see also *Adams v. Holland*, 168 Fed. App'x 17, 21 (6th Cir. 2005).

The Michigan Court of Appeals did not unreasonably conclude that the testimony by the officers that they were canvassing the neighborhood for a serial

rapist and because of other similar cases did not implicate the Confrontation Clause. The state court had a fair basis for determining that this testimony was offered to explain the reason why the officers were canvassing the neighborhood, not for the truth of the matter asserted. *See, e.g.*, *United States v. Deitz*, 577 F.3d 672, 683-84 (6th Cir. 2009) (out-of-court statements providing background information as to why the police took the actions they did are not offered to establish the truth of the matter asserted). The Michigan Court of Appeals therefore did not unreasonably conclude that a Confrontation Clause objection would have been futile and that Lewis' counsel was not ineffective for failing to raise that objection.

Because the Michigan Court of Appeals did not unreasonably reject Lewis' ineffective assistance of counsel claims, Lewis has failed to demonstrate entitlement to relief under *Strickland*.

**B**

Lewis next asserts that he was erroneously sentenced to lifetime electronic monitoring because the Michigan statute requiring such monitoring only applies to offenses where the victim is under seventeen years of age.

The Michigan Court of Appeals considered and rejected this claim on direct appeal:

> Defendant also challenges the trial court's imposition of lifetime electronic monitoring on appeal; however he concedes that *People v. Brantley*, 296 Mich. App. 546, 557-558 (2012) controls this issue. We agree that *Brantley*

16

> controls, and accordingly, defendant is not entitled to any relief on appeal.

*Lewis*, 2014 WL 1515274, at *4.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Lewis has not identified any such federal law here. Instead, he argues that his sentence violates Michigan law. Federal courts "may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Accordingly, Lewis' claim that the state trial court erred when it sentenced him to a lifetime of electronic monitoring is not cognizable on federal habeas review.

**IV**

In order to appeal the Court's decision, Lewis must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when

the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate the Court's conclusion that Lewis has failed to demonstrate entitlement to habeas relief with respect to either of his claims because they are devoid of merit. Therefore a certificate of appealability will be denied.

Although this Court declines to issue Lewis a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith. *See id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). Although jurists of reason would not debate this Court's resolution of Lewis' claims, an appeal could be taken in good faith. Therefore, Lewis may proceed *in forma pauperis* on appeal.

# V

Accordingly, for the reasons stated above, the Court 1) **DENIES WITH PREJUDICE** Lewis' petition for a writ of habeas corpus (ECF #1), 2) **DENIES** Lewis a certificate of appealability, and 3) **GRANTS** Lewis permission to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: March 21, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 21, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9763